IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EDGARDO SOBRADO RIVERA, | No. 4:23-CV-00566 |
| Petitioner, | (Chief Judge Brann) |
| v. | |
| JASEN BOHINSKI,[1] | |
| Respondent. | |

MEMORANDUM OPINION

MARCH 26, 2024

Petitioner Edgardo Sobrado Rivera filed the instant *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He seeks to overturn his 2017 state-court convictions and sentence of life imprisonment without parole. Because Rivera cannot satisfy the stringent requirements for habeas corpus relief, the Court must deny his Section 2254 petition.

I.  **BACKGROUND AND PROCEDURAL HISTORY**

In August 2017, after a three-day jury trial, Rivera was found guilty of first-degree murder, reckless endangerment, and firearms not to be carried without a

---

[1] Rivera named "Kevin Ransom" as Respondent in this case. However, Rivera is confined at SCI Dallas and Superintendent Kevin Ransom has been replaced by an acting superintendent, so the appropriate Respondent in this matter is Acting Superintendent Jasen Bohinski. *See* 28 U.S.C. § 2242; *Rumsfeld v. Padilla*, 542 U.S. 426, 434-35 (2004); *see also* 28 U.S.C. § 2254 Rule 2(a). The Court will therefore substitute the appropriate Respondent in this matter. *See* FED. R. CIV. P. 25(d).

license.[2] Following this guilty verdict, he was immediately sentenced to an aggregate term of life imprisonment without parole.[3]

Rivera's convictions stem from the August 20, 2016 shooting of Henry Liriano-Aquino.[4] Rivera and Liriano-Aquino were involved in drug trafficking together, and Rivera had recently purchased 45 to 50 grams of heroin from Liriano-Aquino for $5,000, to be repaid over time.[5] At trial, the evidence showed that, five or six days after the purchase, Liriano-Aquino began to press Rivera for repayment.[6] Liriano-Aquino also informed Rivera that he was receiving pressure about the money from "people in New York."[7]

At trial, Rivera did not dispute that he fatally shot an unarmed Liriano-Aquino.[8] His theory of defense was that Liriano-Aquino had threatened the lives of his wife and stepson and that he "had no choice but to shoot" him to protect his family.[9] Rivera's wife testified that—on the day of the shooting—she witnessed Liriano-Aquino drive into their neighborhood and point out her vehicle.[10] She also testified that, later that evening, she saw a text message written in Spanish

---

[2] *Commonwealth v. Sobrado-Rivera*, No. 414 MDA 2018, 2019 WL 2881486, at *1, 3 (Pa. Super. Ct. July 3, 2019) (nonprecedential).
[3] *Id.*, at *3.
[4] *Id.*, at *1.
[5] *Id.*, at *2.
[6] *Id.*
[7] *Id.*
[8] *Id.*, at *5, 6, 7.
[9] *Id.*, at *4, 5.
[10] *Id.*, at *2.

from Liriano-Aquino on Rivera's phone that "stated something to the effect that four males would be coming to their house."[11] Rivera likewise testified that, when the two met on the day of the shooting, Liriano-Aquino had told him that he was "finished giving [Rivera] breaks" and was "going to call his New York people and send them to" Rivera's house.[12] Rivera claimed that Liriano-Aquino then "looked at his phone as if to make a call and stated that he was going to make [Rivera] 'a believer.'"[13] Rivera attested that he "felt he had no choice other than to shoot" Liriano-Aquino to protect his family, although he conceded that Liriano-Aquino did not threaten him directly and did not have a gun.[14]

The jury apparently did not believe Rivera's proffered justification of defense of others and instead found him guilty of first-degree murder and other related charges.[15] Rivera appealed, but the Superior Court of Pennsylvania affirmed his judgment of sentence.[16] The Supreme Court of Pennsylvania subsequently denied Rivera's petition for allowance of appeal.[17]

---

[11] *Id.*
[12] *Id.*
[13] *Id.*
[14] *Id.*
[15] *Id.*, at *1.
[16] *Id.*, at *1, 8.
[17] *Commonwealth v. Sobrado-Rivera*, No. 447 MAL 2019, 222 A.3d 384 (Pa. 2019) (table).

3

In January 2020, Rivera filed a *pro se* petition under Pennsylvania's Post Conviction Relief Act (PCRA),[18] the state's corollary to federal habeas relief.[19] PCRA counsel was appointed, who then filed two amended PCRA petitions.[20] On January 11, 2022, the PCRA court dismissed Rivera's second amended petition without an evidentiary hearing.[21] Rivera obtained new counsel for his PCRA appeal and asserted four claims sounding in ineffective assistance of counsel.[22] On October 4, 2022, the Superior Court denied Rivera's PCRA appeal.[23] And, once again, the Supreme Court of Pennsylvania denied Rivera's petition for allowance of appeal.[24]

Rivera lodged his Section 2254 petition and memorandum of law in this Court in April 2023.[25] Respondent filed his response[26] and, after an extension of time, Rivera filed a traverse.[27] Rivera's Section 2254 petition, therefore, is ripe for disposition.

---

[18] 42 PA. CONS. STAT. § 9541 *et seq.*
[19] *See Commonwealth v. Sobrado-Rivera*, No. 242 MDA 2022, 2022 WL 4877397, at *3 (Pa. Super. Ct. Oct. 4, 2022) (nonprecedential).
[20] *Id.*
[21] *Id.*
[22] *See id.*, at *3-6.
[23] *See id.*, at *1, 7.
[24] *Commonwealth v. Sobrado-Rivera*, No. 519 MAL 2022, 292 A.3d 553 (Pa. 2023) (table).
[25] *See generally* Docs. 1, 2.
[26] Doc. 8.
[27] Doc. 12. Although Rivera labeled this document as an "application to supplement or amend" his Section 2254 petition, *see id.*, Rivera does not raise any new or additional claims. Rather, he merely provides more detailed argument regarding the ineffective-assistance claims asserted in his original petition and memorandum of law. *See generally id.* Accordingly, this document was appropriately docketed as a traverse.

## II.   STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)[28] mandates that petitioners demonstrate that they have "exhausted the remedies available in the courts of the State" before seeking federal habeas relief.[29] An exhausted claim is one that has been "fairly presented" to the state courts "by invoking one complete round of the State's established appellate review process," and which has been adjudicated on the merits.[30]

When a claim is properly exhausted and then raised on federal habeas review, the level of deference afforded to the state court decision is substantial.[31] The AEDPA "does not 'permit federal judges to . . . casually second-guess the decisions of their state-court colleagues or defense attorneys.'"[32] Accordingly, under Section 2254(d), federal habeas relief is unavailable for exhausted claims unless the state-court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law . . . or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[33] An

---

[28]   28 U.S.C. §§ 2241–2254.
[29]   *Id.* § 2254(b)(1)(A).
[30]   *Carpenter v. Vaughn*, 296 F.3d 138, 146 (3d Cir. 2002) (quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 844-45 (1999)); *see also Johnson v. Williams*, 568 U.S. 289, 302 (2013).
[31]   *Bey v. Superintendent Greene SCI*, 856 F.3d 230, 236 (3d Cir. 2017), *cert. denied sub nom.*, *Gilmore v. Bey*, 138 S. Ct. 740 (2018) (mem.).
[32]   *Collins v. Sec'y of Pa. Dep't of Corr.*, 742 F.3d 528, 543 (3d Cir. 2014) (quoting *Burt v. Titlow*, 571 U.S. 12, 15 (2013)).
[33]   28 U.S.C. § 2254(d).

unreasonable application of Supreme Court precedent includes situations where "the state court identifies the correct governing legal rule . . . but unreasonably applies it to the facts of the particular state prisoner's case."[34]

This is an intentionally difficult standard to meet.[35] Section 2254(d) "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" clearly established Supreme Court precedent.[36] Thus, to obtain federal habeas relief on an exhausted claim, a state prisoner must demonstrate that the state court's ruling on the claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement."[37]

Finally, if a state court has ruled on the merits of a claim, a federal habeas petitioner generally must meet Section 2254(d)'s requirements "on the record that was before that state court."[38] Absent compelling circumstances,[39] district courts cannot supplement the existing state-court record for claims adjudicated on the merits.[40] "Otherwise, federal habeas petitioners would be able to circumvent the

---

[34] *White v. Woodall*, 572 U.S. 415, 425 (2014) (quoting *Williams v. Taylor*, 529 U.S. 362, 407 (2000)).
[35] *Harrington v. Richter*, 562 U.S. 86, 102 (2011).
[36] *Id.*
[37] *Id.* at 103.
[38] *Cullen v. Pinholster*, 563 U.S. 170, 185 (2011) (footnote omitted).
[39] *See* 28 U.S.C. § 2254(e)(2).
[40] *Brown v. Wenerowicz*, 663 F.3d 619, 629 (3d Cir. 2011).

finality of state court judgments by establishing a new factual record" on federal habeas review.[41]

### III. DISCUSSION

Rivera raises two grounds for relief in his Section 2254 petition. His primary claim is that his trial attorney was constitutionally deficient for failing to be aware of a Spanish text message sent from Liriano-Aquino to Rivera on the day of the shooting, which the prosecution's witness translated during trial and which Rivera claims contained an imminent threat to his family.[42] Rivera also asserts that his trial counsel was ineffective for failing to move to suppress certain electronic messages found on Liriano-Aquino's cellphone.[43]

Rivera includes a section "B" in his initial supporting memorandum of law,[44] in which he asserts that there was a "Fourteenth Amendment" violation by the Superior Court. However, this portion of his memorandum merely argues that the Superior Court unreasonably determined the facts and unreasonably applied federal law, which is simply the Section 2254 standard of review for exhausted habeas claims.[45] The Court, therefore, will examine in turn Rivera's two claims of ineffective assistance of trial counsel.

---

[41] *Id.*
[42] Doc. 2 at 7-10; *see also* Doc. 12 at 12-21.
[43] Doc. 2 at 11; *see also* Doc. 12 at 21-24.
[44] *See* Doc. 2 at 12-16.
[45] *See supra* Section II ("Standard of Review").

A collateral attack based on ineffective assistance of counsel is governed by the familiar two-pronged test set forth in *Strickland v. Washington*.[46] To prevail on such a claim, a defendant must demonstrate that (1) counsel's representation fell below an objective level of reasonableness based on prevailing professional norms, and (2) the deficient representation was prejudicial.[47] The defendant bears the burden of proving both prongs.[48]

In determining whether counsel has satisfied the objective standard of reasonableness under the first prong, courts must be highly deferential toward counsel's conduct.[49] There is a strong presumption that counsel's performance falls within the wide range of reasonable professional assistance.[50] Only a "rare claim" of ineffectiveness of counsel should succeed "under the properly deferential standard to be applied in scrutinizing counsel's performance."[51]

To satisfy the prejudice prong, the defendant must establish a reasonable probability that, but for counsel's errors, the outcome of the proceeding would have been different.[52] The district court need not conduct its analysis of the two

---

[46] 466 U.S. 668 (1984).
[47] *Strickland*, 466 U.S. at 687-88.
[48] *See id.* at 687.
[49] *Id.* at 689.
[50] *See United States v. Gray*, 878 F.2d 702, 710 (3d Cir. 1989).
[51] *Id.* at 711 (citing *Strickland*, 466 U.S. at 689-90).
[52] *Strickland*, 466 U.S. at 694.

prongs in a particular order or even address both prongs of the inquiry if the defendant makes an insufficient showing on one.[53]

When a claim of ineffective assistance of counsel has been exhausted in state court, review of that claim by a federal habeas court is significantly circumscribed. The federal court does not review the ineffectiveness claim *de novo*; rather, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable."[54] Under this "doubly" deferential standard, "so long as fairminded jurists could disagree on the correctness of the state court's decision," a state court's determination that a *Strickland* claim lacks merit precludes federal habeas relief.[55]

### A. Failure to Challenge Interpretation of Text Message

Rivera's principal claim involves a text message from Liriano-Aquino that was written in Spanish and translated to English at trial by Harrisburg Police Detective Libertad Ramos. Detective Ramos, who apparently spoke Spanish, testified that the message—according to her interpretation of it—was "not threatening in any manner."[56] Specifically, she translated the message as follows: "I have four people that I can't sell to because you have me at a standstill. You need to come on with it and give me what you need – what you need to do. I'm

---

[53] *See id.* at 697; *United States v. Lilly*, 536 F.3d 190, 196 (3d Cir. 2008).
[54] *Richter*, 562 U.S. at 101 (emphasis added); *Collins*, 742 F.3d at 547-48.
[55] *Richter*, 562 U.S. at 101, 105 (citation omitted).
[56] *See* Doc. 8-1, Aug. 17, 2017 Trial Tr. 220:9-17, 221:6-8 [hereinafter "8/_/17 Trial Tr. __:__"].

not the one that's the problem. It's the people that are higher up that are giving me pressure."[57] Rivera and his wife, to the contrary, testified that the text message was threatening and that it implied that Liriano-Aquino was going to send "four men" to Rivera's home because he was late in paying for the heroin.[58]

Rivera argues that his trial attorney, George Matangos, performed deficiently because Matangos failed to properly review the discovery materials provided by the Commonwealth, was unaware of this critical text message, and did not confer with Rivera about it. Rivera maintains that this text message was instrumental to his claim of defense of others, and that if Matangos would have performed competently there is a reasonable likelihood that the jury would have believed his theory of defense and found the shooting justified.

Rivera properly exhausted this *Strickland* claim in state court. On PCRA appeal, the Superior Court first found that "trial counsel was aware of the text message in question" because "Detective Ramos, [Rivera], and his wife were all testifying about the same text message."[59] The panel also appeared to dismiss any claim of deficient performance because Matangos had brought out the substance of the text message on direct examination of Rivera and his wife, cross-examined Detective Ramos about it, and recalled Rivera (in rebuttal to Detective Ramos's

---

[57] *Id.* at 220:18-23.
[58] *See Sobrado-Rivera*, No. 242 MDA 2022, 2022 WL 4877397, at *4 & n.5.
[59] *Id.*, at *5.

testimony) to attest that the text message was indeed a threat.[60]  Thus, although not explicitly stated, it appears that the Superior Court did not find Matangos's performance deficient under the first *Strickland* prong.[61]

While the Superior Court's holding on the performance prong may be somewhat unclear, the court unequivocally held that Rivera had failed to establish prejudice under *Strickland*'s second prong.  To wit: the panel concluded that Rivera could not "establish the requisite prejudice merely because the Commonwealth offered Detective Ramos's rebuttal testimony" and therefore Rivera was not "entitled to relief on this claim."[62]

The Pennsylvania Superior Court's determination on this *Strickland* claim was not unreasonable.  Initially, the Court finds that there is an arguable case to be made that Matangos performed deficiently by failing to review this specific text message or discuss it with his client and by allowing the Commonwealth, during trial, to provide the sole Spanish-to-English translation through a potentially partisan police officer.  In particular, Matangos all but admitted during a side bar at trial that he likely had been provided this text message during discovery but had failed to print it out, have it translated, or show it to Rivera.[63]  Moreover, as Rivera

---

[60] *Id.*
[61] It is also possible that the Superior Court collapsed the two *Strickland* elements into one analysis and settled on a conclusion that no prejudice had been shown.
[62] *Sobrado-Rivera*, No. 242 MDA 2022, 2022 WL 4877397, at *5.
[63] *See* 8/17/17 Trial Tr. 282:17-283:5.

notes in his traverse, Matangos likely should not have allowed the only translation of this critical text message to have been performed extemporaneously at trial by a police detective testifying for the prosecution.[64]

However, although a reasonable jurist could conclude that Matangos's performance was deficient, a reasonable jurist could also agree with the Superior Court's determination that his conduct did not fall below the constitutional minimum. After all, Matangos brought out the substance of the allegedly threatening text message during his direct examination of Rivera and Rivera's wife; he skillfully cross-examined Detective Ramos about the message and her translation, getting Ramos to admit that she had never previously transcribed the text message or provided an English copy to defense counsel as requested during discovery[65]; and he even recalled Rivera as a witness to rebut Detective Ramos's interpretation. Thus, the Court cannot conclude that the Superior Court's determination on the *Strickland* performance prong was unreasonable.

The Court reaches the same conclusion as to *Strickland*'s prejudice prong. The Superior Court found that Rivera had failed to establish prejudice because the jury had heard his version of the text message (through both Rivera's and his wife's testimony) as well as Detective Ramos's interpretation and concluded that "it was within the province of the jury to decide what weight to afford their

---

[64] *See* Doc. 12 at 20-21.
[65] *See* 8/17/17 Trial Tr. 226:23-229:1.

12

respective testimonies."[66]  Not only was this conclusion a reasonable application of *Strickland*, it was also the correct one.

While Rivera maintains that this text message was crucial to his justification defense, he overlooks the substantial countervailing evidence presented at trial that undermined this defense.  That evidence included that he owed Liriano-Aquino (a drug dealer) $5,000 and was being pressured to repay that debt; he did not contact police after receiving the allegedly threatening text message; Rivera himself scheduled the meeting with Liriano-Aquino where the shooting took place; Liriano-Aquino was unarmed when Rivera shot him twice; and Liriano-Aquino did not threaten him during that final face-to-face meeting.  In fact, on direct appeal, the Superior Court laid out in detail how the facts and evidence adduced at trial did not support the justification of use of force for the protection of others under 18 PA. CONS. STAT. § 506.[67]

Notably, the Court observes that nowhere in his Section 2254 petition, memorandum of law, traverse, or other supporting documents does Rivera provide a copy of the at-issue text message or an alternative translation.[68]  Nor does it appear that Rivera ever provided such information to the state court.[69]  This would

---

[66]  *See Sobrado-Rivera*, No. 242 MDA 2022, 2022 WL 4877397, at *5.
[67]  *See Sobrado-Rivera*, No. 414 MDA 2018, 2019 WL 2881486, at *5-6.
[68]  During closing, the prosecution noted that Rivera "can speak Spanish."  8/17/17 Trial Tr. 276:6-10.
[69]  *See generally* Doc. 8-5 (brief to Superior Court on PCRA appeal).

13

seem to be an elemental step in establishing the substance and nature of this text message and the purported prejudicial effect from Matangos's (allegedly deficient) performance at trial. If Detective Ramos got the translation correct, it would be difficult to show *any* prejudice from Matangos's alleged error, let alone prejudice sufficient to meet *Strickland*'s "reasonable probability of a different outcome" standard. The Court thus concludes that the Superior Court's determination on the *Strickland* prejudice prong was both reasonable and correct.

In sum, the Superior Court's application of *Strickland* to this claim was not unreasonable. No relief is due on Rivera's first ineffective-assistance-of-counsel claim.[70]

### B. Failure to Move to Suppress Cellphone Evidence

In his second ground for relief, Rivera contends that Matangos was ineffective for failing to move to suppress Liriano-Aquino's cellphone and the text and Facebook messages found thereon. This claim was likewise exhausted in state

---

[70] In his memorandum of law, Rivera additionally contends that Matangos's inability to confer with him about the at-issue text message resulted in actual or constructive denial of the assistance of counsel, thus triggering a "presumption of prejudice." *See* Doc. 2 at 7-10 (citing, *inter alia*, *Geders v. United States*, 425 U.S. 80 (1976); *Perry v. Leeke*, 488 U.S. 272 (1989)). First, this claim was never presented to the state courts and thus it is procedurally defaulted. *See generally* Doc. 8-5. Second, Rivera's reliance on *Geders* and *Perry* is misplaced. In no way could Rivera's trial circumstances surrounding the at-issue text message constitute actual or constructive denial of the assistance of counsel such that prejudice could be presumed. *Cf. Perry*, 488 U.S. at 279-80 (explaining that in *Geders*, no prejudice analysis was performed because there had been an actual denial of defendant's right to "assistance of counsel altogether" (citation omitted)).

court.[71]  The Superior Court found that Rivera had failed to satisfy any of the ineffective-assistance prongs and had failed to show that a suppression motion would have been successful.[72]  Rivera has not established how the Superior Court's application of *Strickland* was unreasonable.

In his initial memorandum of law, Rivera provides no evidence or argument to support this Sixth Amendment claim.[73]  He simply asserts that the cellphone was "tainted" because Liriano-Aquino's wife picked up the phone and then replaced it before police arrived.[74]

Rivera provides more support in his traverse, appearing to replicate the arguments made by his attorney on PCRA appeal.[75]  None of these arguments, however, has merit.  As the Superior Court noted, the electronic messages in question were taken from the cellphone of Liriano-Aquino, the murder victim.[76]  Neither PCRA counsel nor Rivera has provided any legal authority that would prohibit the search by law enforcement of a deceased victim's cellphone or implicate application of the exclusionary rule to its contents.  Rivera, in fact, likely had no Fourth Amendment "standing" to even assert such a pretrial objection to the

---

[71] *See Sobrado-Rivera*, No. 242 MDA 2022, 2022 WL 4877397, at *6.
[72] *See id.*
[73] *See* Doc. 2 at 11.
[74] *See id.*
[75] *Compare* Doc. 12 at 21-24, *with* Doc. 8-5 at 33-40.
[76] *Sobrado-Rivera*, No. 242 MDA 2022, 2022 WL 4877397, at *6.

search or seizure of Liriano-Aquino's cellphone, a device in which Rivera had no ownership, control, possessory interest, or legitimate expectation of privacy.[77]

Matangos, therefore, likely could not have even moved to suppress Liriano-Aquino's cellphone or its contents because his client—Rivera—had no Fourth Amendment standing to assert such a claim. Even if Matangos would have filed a suppression motion, it would have plainly failed on the merits under Pennsylvania law.[78] Consequently, Matangos could not have been ineffective for failing to file a frivolous motion to suppress, as an attorney cannot be ineffective for failing to raise a meritless argument.[79]

The Superior Court's determination of this second *Strickland* claim was both reasonable and correct. Rivera's second and final habeas claim, therefore, does not warrant relief.

---

[77] *See United States v. Correa*, 653 F.3d 187, 190 (3d Cir. 2011) (citations omitted) (explaining that, to invoke the Fourth Amendment's exclusionary rule, a defendant must have "standing," *i.e.*, "a legitimate expectation of privacy in the invaded place"); *United States v. Mosley*, 454 F.3d 249, 253 n.5 (3d Cir. 2006) ("The 'standing' inquiry, in the Fourth Amendment context, is shorthand for the determination of whether a litigant's Fourth Amendment rights have been implicated."); *Commonwealth v. Hawkins*, 718 A.2d 265, 266-70 (Pa. 1998) (providing thorough explanation of Pennsylvania law concerning Fourth Amendment standing doctrine and exclusionary rule).

[78] *See Commonwealth v. Millner*, 888 A.2d 680, 691-92 (Pa. 2005) ("[A] defendant cannot prevail upon a suppression motion unless he demonstrates that the challenged police conduct violated his own, personal privacy interests.").

[79] *Preston v. Superintendent Graterford SCI*, 902 F.3d 365, 379 (3d Cir. 2018) (quoting *Ross v. Dist. Att'y of Cnty. of Allegheny*, 672 F.3d 198, 211 n.9 (3d Cir. 2012)).

## IV. CONCLUSION

For the foregoing reasons, the Court will deny Rivera's petition for a writ of habeas corpus under 28 U.S.C. § 2254. The Court will likewise deny a certificate of appealability, as Rivera has failed to make a substantial showing of the denial of a constitutional right.[80] An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

---

[80] *See* 28 U.S.C. § 2253(c)(2).